**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-1** |
| **BAHTIA GREENE** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

From October 2021 to December 2021, defendant Bahtia Greene abused her position at Wells Fargo by taking pictures of checks that customers sent to the bank and sending those pictures to other individuals who then counterfeit checks. While this conduct took place over a relatively short period of time, the defendant's actions resulted in losses of approximately $745,390. Due to the unique circumstances of this case, including the defendant's lack of criminal history, her role as caregiver to two minor children, and upcoming changes to the Sentencing Guidelines, the government recommends a sentence below the 27- to 33-month advisory guidelines range. The government also requests that the Court impose at least two years of supervised release, restitution in the amount of $745,390, and forfeiture of $19,407.

## I. PROCEDURAL HISTORY

On January 3, 2026, the government filed a one-count Information charging the defendant with one count of bank fraud, in violation of 18 U.S.C. § 1344. (ECF No. 1.) On January 12, 2026, the defendant pled guilty to this count pursuant to a plea agreement.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentences

The statutory maximum penalties for bank fraud are a term of imprisonment of 30 years, a term of supervised release of 5 years, a fine of $1,000,000, and a special assessment of $100. Full restitution shall be ordered.

### B. Sentencing Guidelines Calculation

The PSR correctly calculates the defendant's applicable advisory guideline range as 27 to 33 months' imprisonment (total offense level 18 and criminal history category I).

The Probation Office calculated the defendant's offense level as follows:

- The base offense level offense is 7 (USSG § 2B1.1(a)(1)).
- 14 points are added because of actual loss of $745,390 (USSG § 2B1.1(b)(1)(I)).[1]
- 2 points are added because the offense involved 10 or more victims (USSG § 2B1.1(b)(2)(A)(i)).
- 3 points are subtracted for acceptance of responsibility and timely plea (USSG § 3E1.1).
- 2 points are subtracted due to the defendant having 0 criminal history points (USSG § 4C1.1).

[1] The fraud loss in this case is $745,390. Under the guidelines currently in place, this results in a 14-level increase because it falls between $550,000 and $1.5 million. As of November 1, 2026, however, this amount of fraud loss would result in a 12-level increase because it falls between $350,000 and $750,000. *See* https://fingfx.thomsonreuters.com/gfx/legaldocs/klpylbbdzvg/sentencing.pdf at page 14. Accordingly, the government agrees that the Court may vary downward given that, if this sentencing hearing took place on or after November 1, 2026, the guidelines would be 21 to 27 months (offense level 16, criminal history category I). The government agrees to this variance only if the defendant agrees at the sentencing hearing that she may not in the future seek a further sentencing reduction on the basis of the fraud loss guidelines that will go into effect on November 1, 2026.

**C. <u>Analysis of 18 U.S.C. § 3553(a) Factors</u>**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. This Court must also consider all of the sentencing considerations set forth in Section 3553. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553. The relevant § 3553 factors will be discussed in turn.

1. <u>The Nature and Circumstances of the Offense</u>

This case involves very serious criminal conduct. The defendant was entrusted with access to checks that Wells Fargo customers sent to the bank and expected to be treated securely and responsibly. The defendant abused that trust by taking pictures of the customer checks and selling the checks to others, who then created counterfeit checks using the information in the pictures. While the defendant was not the leader of this scheme, as evidenced by the

comparatively small amount of money she received ($19,407), she filled an essential role since she was the only one with access to the customer checks.

As the Court can see, this conduct can quickly result in large amounts of financial harm. In just three months, from October 2021 to December 2021, the bank sustained losses approaching $750,000 based on counterfeit checks being deposited into or from Wells Fargo accounts. Wells Fargo swiftly detected the defendant's misconduct and terminated her employment in February 2022. Wells Fargo's investigation showed:

- The defendant used a Wells Fargo computer system to view over 1000 images of checks, whereas other employees in her same role viewed only one check.
- Surveillance footage shows that on 41 days during the October 2021 to December 2021 time period, the defendant was observed on approximately 200 occasions raising her arms in a pattern consistent with using a cell phone to take a picture of her computer screen.
- Approximately 51 checks that the defendant viewed during from the October 2021 to December 2021 timeframe were identified as posted for sale on Telegram, a social media and messaging service that is known for the anonymity it provides to users and is used to sell stolen or counterfeit checks. This included: (i) two checks dated December 22, 2021, which were viewed by the defendant and posted on Telegram on January 4, 2022; and a check dated November 15, 2021, which was viewed by the defendant on December 3, 2021 and posted for sale on Telegram on December 4, 2021.

To her credit, the defendant admitted to most of her misconduct during several voluntary interviews with Wells Fargo and the investigators in this case. After being advised of the

investigation, she retained defense counsel and later agreed to plead guilty pursuant to an Information. As a result, the government never had to present its case to a grand jury, and the Court did not need to preside over what would have been a complicated trial or rule on any pretrial or posttrial motions. The defendant's early guilty plea allowed the government and Court to allocate their resources efficiently during the pendency of this case.

2. <u>The History and Characteristics of the Defendant</u>

The defendant is 33 years old and has two minor children. She currently works at a non-profit that assists troubled youths. (PSR ¶ 70.) Aside from a brief period of unemployment in 2024 (during which time she worked as an Uber and Lyft driver), the defendant has been gainfully employed since at least 2016. (*Id.* ¶ 71-74.) The defendant received a citation for disorderly conduct in April 2024 for possessing marijuana but otherwise has no criminal history. (*Id.* ¶ 36.)

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>

There is a strong need for the Court's sentence to promote respect for the law, reflect the seriousness of the offense, and provide just punishment for the offense. The defendant exploited her position with Wells Fargo and caused significant losses to the bank and its customers. Accordingly, the government believes a brief period of incarceration is warranted.

4. <u>The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant</u>

Given the defendant's work history and lack of criminal history, the government does not believe the § 3553(a) factor of specific deterrence warrants a long custodial sentence in this case. With regard to general deterrence, a brief sentence of incarceration will send the right message to

other bank insiders that stealing and selling customer information will result in a significant penalty—i.e., a felony conviction and term of incarceration—even if it is the person's first-time offense.

5. The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

The government is unaware of any need to adjust the defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct

There are no co-defendants in this case.

7. The Need to Provide Restitution to Any Victims of the Offense

The defendant is required to pay restitution to Wells Fargo.

**D. Supervised Release**

Pursuant to USSG §§ 5D1.1 and 5D1.2, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18

U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

The government requests a term of supervised release of at least two years. While the defendant does not have a criminal record, the conduct was serious and further supervision after release from custody is warranted to aid her reentry to society and protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays any remaining forfeiture amounts. This assessment also supports imposition of all the mandatory and standard conditions of supervised release listed in USSG § 5D1.3 in addition to the special condition regarding access to financial information (USSG § 5D1.3(b)(3)(C)), given the defendant's restitution and forfeiture obligations.

## III. CONCLUSION

The government's recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*<u>/s/ Francis A. Weber</u>*
FRANCIS A. WEBER
Assistant United States Attorney

Date: August 31, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Sentencing Memorandum was served by ECF and email upon the following:

Nancy A. MacEoin, Esq. (Nancy_maceoin@fd.org)

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Date: August 31, 2026